IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

STACEY FITZGERALD and BRIAN
THORNTON,

        Plaintiffs,

  vs.

AMERICAN FAMILY MUTUAL INSURANCE
COMPANY,

        Defendant.

Case No. 6:14-cv-497-AA
OPINION AND ORDER

R. Scott Taylor
Brandon G. Braun
Clinton L. Tapper
Nickolaus N. Gower
Taylor & Tapper
400 E 2nd, Ste. 103
Eugene, Oregon 97401
    Attorneys for plaintiffs

Page 1 - OPINION AND ORDER

Ryan J. Hall
Cole Wathen Leid Hall PC
303 Battery Street
Seattle, WA 98121
    Attorney for defendant

AIKEN, Chief Judge:

Plaintiffs Brian Thornton ("Thornton") and Stacy Fitzgerald move for summary judgment against Defendant American Family Mutual Insurance Company related to fire damage to their personal property. For the reasons set forth below, plaintiffs' motion is granted in part and denied in part.

## BACKGROUND

Plaintiffs own a piece of real property in Reedsport, Oregon. There are three buildings on the property: the main residence, a guest cottage, and a pole barn. On May 31, 2013, the pole barn caught fire. Damage to the barn was so extensive, it had to be completely rebuilt. Although the guest cottage did not burn, it sustained heat damage to the exterior and water damage to the interior. Personal property inside the guest cottage also was damaged. The main residence sustained minor smoke damage. All disputes regarding damage to the structures have been resolved.[1] The only issues remaining before the court pertain to amounts owed

---

[1] Before plaintiffs filed this lawsuit, defendant paid the limit under the policy for the damage to the pole barn, and also paid to repair the smoke damage to the main dwelling. In addition, the parties agree any dispute about structure coverage of the guest cottage now moot. See Doc. 39-2 (email from defendant's counsel to plaintiffs' counsel confirming the parties' oral "agree[ment] that based upon the appraisal ruling, there is no need to adjudicate any further the issue of limits and structure coverage").

Page 2 - OPINION AND ORDER

by defendant under the policy due to damage to plaintiffs' personal property and to trees on the property.

I. Personal Property

At the time of the fire, plaintiffs were insured under a policy ("the policy") issued by defendant. The policy provided both "actual cash value" and "replacement cost" coverage for personal property. First, the insured is entitled to receive a settlement amount equal to the actual cash value of covered personal property.[2] This payment is made whether the insured actually repaired or replaced any of the damaged personal property. Second, to the extent that the actual cash value settlement does not exceed the coverage limit, the insured can obtain additional payment for replacement costs. To obtain such payment, the insured must actually replace the property within one year of the date of the loss. The insured pays the initial replacement cost, submits a receipt, and the insurer pays the difference between the replacement cost and the actual cash value already paid for that item.

Plaintiffs notified defendant about the fire the day it occurred. Defendant retained Enservio, Inc., a contents and valuation company, to visit the loss site, inspect the property,

---

[2] "Actual cash value" is not defined in the policy. Courts sometimes equate actual cash value with fair market value, and other times define it as replacement cost minus depreciation. See Schnitzer v. S.C. Ins. Co., 661 P.2d 300, 303 & n.3 (Or. Ct. App. 1983) (citing case law supporting both definitions); Director v. S.C. Ins. Co., 619 P.2d 649, 651 (Ct. App. Or. 1980) (describing submission of the question of the meaning of "actual cash value" to a jury). The precise definition of actual cash value is not at issue in this case.

Page 3 - OPINION AND ORDER

and generate a personal property loss inventory ("inventory"). Plaintiffs, through their public adjuster, disputed some of the valuations in the inventory. Defendant invited plaintiffs to submit documentation supporting higher valuation for the disputed items. In the first three months after the fire, defendant issued to plaintiffs actual cash value payments totaling $67,180.45.

On March 26, 2014, plaintiffs filed this diversity action alleging breach of contract, negligence, fraud, and intentional infliction of emotional distress. Plaintiffs alleged multiple misrepresentations during the adjustment of the personal property loss, including:

> a. Defendant wrongfully claiming that 46 out of 664 items listed on the personal property inventory were depreciated 100%;
>
> b. Defendant making numerous mathematical errors in calculating the [actual cash value] of Plaintiffs' personal property; and
>
> c. Defendant changed replacement value and brands from Plaintiffs' original inventory without authority or approval from Plaintiffs.

Pl.'s Compl. ¶ 20.

During discovery, plaintiffs submitted internet pricing information supporting a higher valuation for certain items in the inventory. Enservio updated the inventory as a result of that information and made other corrections. As a result of these changes, defendant issued additional actual cash value payments to plaintiffs totaling $11,570.26.

In April 2014, defendant extended by 6 months the contractual deadline for submitting receipts in support of claims for

Page 4 - OPINION AND ORDER

replacement costs. As of June 2015, defendant had paid plaintiffs a total of $21,296.22 in replacement costs.

In February 2015, the parties entered into a stipulation, characterized as "an agreement intended to provide the most efficient and cost effective resolution of all three components of this suit." Doc. 25 at 1. The three components were "(1) valuation of claimed items (personal property/structure); (2) policy interpretation/structure limits; and (3) extra-contractual claims."

Regarding valuation disputes, the parties agreed "to submit any and all issues regarding Plaintiffs' contents and structure claims to appraisal for resolution." Doc. 25 at 2. They reserved all rights related to (1) applicable limits under the policy; and (2) attorney fees. The parties further agreed that "issues regarding policy interpretations/structure limits will be resolved by dispositive motions." Doc. 25 at 3. Finally, the parties agreed to resolve any extra-contractual claims not resolved by dispositive motions through mediation.

After an appraisal hearing, the umpire concluded defendant's actual cash value payments to date had undervalued plaintiffs' losses. The difference between the umpire's evaluation and defendant's valuation was primarily attributable to defendant's (1) application of a 100% depreciation rate, a rate "inconsistent with industry standards," to 66 items of personal property; and (2) misidentification of brands, which led to incorrect pricing. Doc. 37-5 at 2. The net appraisal award to plaintiffs was $13,097.02.

Page 5 - OPINION AND ORDER

Doc. 37-6 at 2. Defendant mailed plaintiffs a check for the full amount of the award, but plaintiffs declined the check, refusing to "settle this case for the amount owed on contents without an award of attorney fees and costs." Doc. 37-8 at 1. Defendant then moved to deposit the funds in this court's registry. Doc. 38. The motion was granted (doc. 41) and the funds have since been deposited.

## II. Damage to Trees

The policy covered fire damage to "trees, plants, shrubs and lawns on the insured premises." Doc. 37-1 at 8. Plaintiffs allege the fire destroyed nine trees and severely damaged seven other trees. Defendant agrees that although seven trees were damaged, the inspection after the fire revealed no destroyed trees. Defendant paid to prune the seven damaged trees in an effort to save them. Plaintiffs allege the damaged trees subsequently died.

Plaintiffs, however, did not submit a claim for tree damage to the appraiser. After plaintiffs' lawyer raised the tree damage issues in an email after the appraisal hearing, defendant's lawyer noted the trees had not been a subject of that hearing. Plaintiffs did not ask the umpire to reopen proceedings or otherwise address their claim regarding the trees.

## STANDARDS

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. T.W. Elec.

Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Whether a reasonable jury could return a verdict for the nonmoving party determines the authenticity of a dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324. "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." Diaz v. Eagle Produce Ltd. Partnership, 521 F.3d 1201, 1207 (9th Cir. 2008).

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630.

## DISCUSSION

### I. Judgment to Enforce Appraisal Award

Plaintiffs first move this court to judicially confirm the appraisal award. The heart of this dispute is plaintiffs' eligibility for statutory attorney fees. Oregon law provides

> [I]f settlement is not made within six months from the date proof of loss is filed with an insurer and an action

> is brought in any county of this state upon any policy of
> insurance of any kind or nature, and the plaintiff's
> recovery exceeds the amount of any tender made by the
> defendant in such action, a reasonable amount to be fixed
> by the court as attorney fees shall be taxed as part of
> the costs of the action and any appeal thereon.

Or. Rev. Stat. § 742.061(1). Plaintiffs seek to convert the appraisal award into a money judgment because such a judgment is a prerequisite to qualifying for attorney fees under the statute. Triangle Holdings, II, LLC v. Stewart Title Guaranty Co., 337 P.3d 1013, 1019 (Or. Ct. App. 2014), review dismissed, 354 P.3d 697 (Or. 2015).

Defendant asserts the attorney fees statute is inapplicable in this case. First, defendant contends payment of the appraisal award cannot be a "recovery" within the meaning of the statute because the appraisal process was undertaken pursuant to the insurance contract and not as part of this litigation. Defendant correctly notes the contract provides for appraisal in the event the contracting parties fail to agree on the amount of loss. But that does not separate the appraisal process from this litigation. The parties agreed to settle their valuation dispute through appraisal only after plaintiffs filed this lawsuit, via a stipulation expressly stating it was "an agreement intended to provide the most efficient and cost effective resolution of all three components of this suit." Doc. 25 at 1. Once converted into a money judgment, the appraisal award will be a "recovery" within the meaning of the statute.

Defendant next argues the attorney fees statute does not apply because it paid all claims within six months of receiving

Page 8 - OPINION AND ORDER

plaintiffs' proof of loss. Defendant alleges the proof of loss was plaintiffs' appraisal hearing evidence supporting higher valuation of the damaged personal property. If correct, plaintiffs are ineligible for attorney fees because defendant attempted to tender payment of the full appraisal award within six months of the hearing.

Defendant's argument is based on an impermissibly narrow construction of the phrase "proof of loss." "Proof of loss" for the purposes of the attorney fees statute means "[a]ny event or submission that would permit an insurer to estimate its obligations (taking into account the insurer's obligation to investigate and clarify uncertain claims)." Scott v. State Farm Mut. Auto. Ins. Co., 190 P.3d 372, 377 (Or. 2008). An insured provides proof of loss—and the statutory clock starts ticking—whenever the insurer has "an adequate opportunity for investigation . . . to enable it to form an intelligent estimate of its rights and liabilities before it is obliged to pay." Zimmerman v. Allstate Prop. & Cas. Ins. Co., 311 P.3d 497, 503 (Or. 2013) (quoting Dockins v. State Farm Ins. Co., 985 P.2d 796, 800 (Or. 1999)). "If a submission, by itself, is ambiguous or insufficient to allow the insurer to estimate its obligations, it nevertheless will be deemed sufficient if it provides enough information to allow the insurer 'to investigate and clarify uncertain terms.'" Id. (quoting Dockins, 985 P.2d at 801).

Defendant faults plaintiffs for failing to "submit[] their own inventory or a marked up inventory" and "inexplicabl[y] deci[ding]

Page 9 - OPINION AND ORDER

not to forward . . . proof of higher value" to defendant. Def.'s Resp. Mot. Summ. J. 22, 24. Contrary to defendant's suggestion, however, there is no statutory requirement that an insured propose a particular valuation of the loss or challenge the insurer's valuation with documentation.[3] However helpful the documentation supporting higher pricing might have been to defendant, plaintiffs were under no duty to provide it on penalty of losing their right to attorneys fees.

Here, plaintiffs provided proof of loss when they provided defendant notice of the fire on May 31, 2013. That notice triggered defendant's obligation to investigate the loss. Six months later, there remained active disputes regarding the valuation of plaintiffs' losses. Accordingly, the statutory requirement mandating no settlement within six months of the filing of proof of loss has been met here.

Finally, defendant asserts its willingness to pay the full appraisal award renders a money judgment unnecessary. In Triangle Holdings, the Oregon Court of Appeals cautioned "an insurer should not be able to defeat the insured's entitlement to attorney fees by making it impossible for the insured to obtain a judgment on a concededly meritorious claim." 337 P.3d at 1018. That is

---

[3] The insurance contract requires the insured to provide the insurer with "a detailed list of the damaged property, showing the quantities, when and where acquired, original cost, current value, and the amount of loss claimed." Doc. 37-1 at 12. But plaintiffs' duties under the contract do not determine the meaning of "proof of loss" under the statute. See Dockins, 985 P.2d at 799 ("[C]ase law from this court establishes that the term [proof of loss] encompasses more than the ordinary, policy-based meaning.")

precisely the situation here. The parties agreed the appraisal process would determine all valuation issues in this case. They expressly reserved the issue of attorneys fees. Plaintiffs obtained an appraisal award in their favor. Oregon law is clear the award must be converted into a money judgment before plaintiffs are able to pursue their properly reserved right to statutory fees. Id. at 1019. Plaintiffs are under no obligation to accept what amounts to an offer to settle the valuation dispute without attorney fees. See id. at 1018 (noting "plaintiff could have agreed to dismiss its claim only in exchange for an amount that included attorneys fees" but "did not pursue" that option).

Plaintiffs' motion for summary judgment with respect to the appraisal is granted, and plaintiffs are awarded $13,097.02.

II. Damage to Trees

Plaintiffs next assert they are entitled to $8,000 to compensate them for tree damage. Defendant argues plaintiffs are barred from raising this claim because they failed to raise it in the appraisal process. I agree with defendant.

"[T]he interpretation and enforceability of [a] stipulation . . . [is] governed by the basic principles of contract law." Fred Hutchison Cancer Research Ctr. v. United of Omaha Life Ins. Co., 821 F. Supp. 644, 647 (D. Or. 1993). "A written contract must be read as a whole and every part interpreted with reference to the whole." Sharkey's Inc. v. Covalt, 704 F.2d 426, 435 (9th Cir. 1983).

Plaintiffs concede they presented no evidence at the appraisal hearing regarding tree damage. They argue they were under no obligation to do so, however, because the stipulation provided "any and all issues regarding valuation of Plaintiffs' contents and structure claims" would be submitted "to appraisal for resolution." Doc. 25 at 2. Because trees fall under a supplementary coverage provision, rather than under the contents or structure coverage provisions, plaintiffs argue tree damage was not covered by the stipulation.

If the appraisal section of the stipulation were the full contract between the parties, I would agree with plaintiffs' interpretation. But their reading makes little sense when the stipulation is read as a whole. The stipulation begins by listing the "three basic components" of this action: "(1) valuation of claimed items (personal property/structure); (2) policy interpretation/structure limits; and (3) extra-contractual claims." Doc. 25 at 1. It further states "the parties have reached an agreement intended to provide the most efficient and cost effective resolution of all three components of this suit." Id. Because the stipulation proposes a framework for resolving all components of the action, all claims must fall into one of the three listed categories.

The claim related to the trees is not extra-contractual, nor does it concern policy interpretation or policy limits. Valuation is the only remaining category. While the fit is not perfect, as the trees are not "personal property" or "structures" within the

Page 12 - OPINION AND ORDER

meaning of the policy, the specific references to personal property and structure modify the broader category "valuation of claimed items." This same broader heading appears in the "Action/Litigation Plan" section, which provides for "Valuation of Claimed Items/Personal Property via Appraisal." Doc. 25 at 2. The trees are claimed items. Although the stipulation could have been drafted with greater specificity, I find the parties' intent, as expressed in the stipulation, was to resolve <u>all</u> disputes regarding valuation through the appraisal process. This extends to tree damage, notwithstanding the "contents and structure claims" qualifiers.

Plaintiffs failed to submit evidence about the trees during the appraisal process. They declined to take any action even after defendant pointed out their omission in an email. Plaintiffs thus waived their claim for tree damage payment. Plaintiffs' motion for summary judgment on this issue is denied, and claims related to the trees are dismissed with prejudice.

### III. Doctrine of Prevention

Finally, plaintiffs assert defendant's undervaluation of their losses, and resulting underpayment of actual cash value, prevented them from complying with the procedures necessary to obtain replacement cost benefits. Plaintiffs urge this court to excuse them from complying with those procedures, thus entitling them to actual replacement cost for all of their damaged personal property, regardless of whether they actually replaced that property. This claim cannot be resolved on summary judgment.

"[W]here the conduct of the defendant has prevented the performance of a contract provision by the plaintiff," the plaintiff is excused from performing under that provision. Anderson v. Allison, 471 P.2d 772, 774 (Or. 1970). In general, "[w]hether interference by one party to a contract amounts to prevention so as to excuse performance by the other party . . . is a question of fact to be decided by the jury under all of the proved facts and circumstances." 13 Williston on Contracts § 39:3 (4th ed.). But when an insurer denies coverage and refuses to pay an actual cash value settlement, some courts have held the insurer's action prevented the insured from complying with the replacement cost provisions of the contract as a matter of law. See D & S Realty, Inc. v. Markel, Inc., 816 N.W.2d 1, 17 & n.31 (Neb. 2012) (collecting cases); Harleysville Mut. Ins. Co. v. Kingsport Packaging Co., Inc., No. 2:02-CV-235, 2011 U.S. Dist. LEXIS 147181 at *3 (E.D. Tenn. Dec. 22, 2011) ("The defendants' inability to comply with the policy requirements regarding replacement cost coverage is attributable to the plaintiff's refusal to honor their claim in the first instance.")

Here, there was no coverage denial. Defendant paid $67,180.45 of plaintiffs' actual cash value claims before the replacement coverage period expired. Since then, defendant has (1) paid an additional $11,570.26 in actual cash value; and (2) been assessed an additional $13,097.02 in actual cash value via the appraisal award. Defendant thus undervalued plaintiffs' personal property losses by approximately 27 percent. Plaintiffs contend defendant

prevented them from obtaining the full benefit of their replacement cost coverage by systematically underestimating the actual cash value of their personal property. They allege this reduced the funds they had available to replace damaged items within the replacement coverage period, thus preventing them from replacing as much of their damaged personal property as they would have replaced had they been paid immediately the full actual cash value of their losses.

Several genuine questions of material fact remain. The parties dispute whether 27 percent is a substantial undervaluation. They also dispute whether the undervaluation was intentional or the product of a good-faith dispute in a complex process. Some evidence in the record supports each party's theory. For example, although there is evidence defendant directed Enservio to apply a depreciation rate higher than the industry standard in determining actual cash value, defendant also extended the contractual replacement coverage term by 6 months. It cannot be determined at this stage whether defendant's undervaluation of plaintiffs' losses amounted to prevention.[4] Plaintiffs' motion for summary judgment on this issue is denied.

---

[4] Plaintiffs also argue defendant materially breached the policy. But their arguments regarding material breach mirror their prevention arguments. In any event, when there are disputed facts, whether a breach is material cannot be determined at the summary judgment stage. McKeon v. Williams, 799 P.2d 198, 200 (Or. 1990).

CONCLUSION

Plaintiffs' motion for summary judgment (doc. 35) is GRANTED with respect to the motion for a money judgment enforcing the appraisal award, and plaintiff is awarded $13,097.02. Plaintiffs' motion for summary judgment is otherwise DENIED. Defendant's motion to strike (doc. 42) is DENIED.[5] The request for oral argument is DENIED as unnecessary.

IT IS SO ORDERED.

Dated this 2 of October 2015.

_____
Ann Aiken
United States District Judge

---

[5] Defendant moves to strike Thornton's affidavit as lacking foundation and improperly offering an expert opinion. Thornton does not make any statements in his affidavit that are legal or expert opinions. He makes appropriate statements as a percipient witness about his expectations regarding the insurance contract, as well as about what happened to the trees on his property.